UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

IN THE MATTER OF THE )
SEARCH OF MICROTEL ROOM 237 )
RESIDENCE, LOCATED AT 7014 ) FILED UNDER SEAL
MCCUTCHEON ROAD )
CHATTANOOGA, TENNESSEE ) Case No. 1:22-mj-29
)

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

The Affiant, Marc Saint-Louis, Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, deposes and states the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I, Marc Saint-Louis, am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the United States Department of Justice and have been so employed since January 2020. I am currently assigned to the ATF Chattanooga, Tennessee Field Office. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) and am empowered by law to conduct investigations of, and to make arrests for violations of federal laws, including, but not limited to, Title 18, U.S. Code, Section 1962 and Title 18 and U.S. Code, Section 922g. In addition to my employment with ATF, I have over 9 years of law enforcement experience with the Chattanooga Police Department, Chattanooga, Tennessee. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigators Training Program. I am a graduate of the ATF National Academy's Special Agent Training Program. In the performance of my duties, I have conducted

Page 1 of 10

investigations for violations of state and federal laws, including drug trafficking, firearms trafficking, and other violent crimes. I have received specialized training with respect to narcotics and firearms violations and have been involved in numerous investigations involving violent crimes and the seizure of firearms and controlled substances. I also have a Bachelor of Science in Criminal Justice from The University of Tennessee at Chattanooga.

2. This affidavit is submitted in support of an application for a search and seizure warrant for Microtel, 7014 McCutcheon Road, Room 237, Chattanooga, Tennessee. The address is known to be associated with Toney BARKER, (hereinafter BARKER). Information contained in this affidavit has been obtained through observations by your Affiant, interviews with fellow law enforcement officers, and information provided by ATF Confidential Informants.

3. Not every fact known to your Affiant regarding the case has been included in the affidavit. Your Affiant has only included information and facts needed for the court to make a finding of probable cause.

4. Based upon your Affiant's training and experience and participation in investigations involving controlled substances, your Affiant knows that when controlled substances are illegally used, manufactured, and trafficked, other supporting items and materials are usually present in addition to the controlled substances themselves. These supporting items commonly associated with the use of and trafficking of controlled substances include, but are not limited to: drug paraphernalia, scales, and packaging materials suitable for particular substance(s), records and notes (including computer and electronically stored) of controlled substance transactions, money (proceeds of or capital for controlled substance(s) transactions), firearms kept for protection, stolen property (often traded for controlled substances), electronic

Page 2 of 10

Case 1:22-mj-00029-CHS    Document 2    Filed 02/07/22    Page 2 of 14    PageID #: 8

devices suitable for use in controlled substance transactions, recordings of such transactions, or electronic devices suitable for avoiding law enforcement.

5. It is also common for traffickers of these substances to use electronic communication devices such as cellular telephones, pagers, both numeric and two-way, and computers so that they can conduct their business at virtually any time without unnecessary delay. Your Affiant knows that these devices are usually found on or in very close proximity to these persons and that such electronic devices are capable of storing information such as phone numbers and/or coded messages which may lead to the identity of codefendants, coconspirators, and/or sources of supply. Cellular phones, phone records, device purchase agreements and other related documents related to the ownership are normally kept at their businesses, and/or places of operation. It is also common for them keep their electronic communication devices and cellular telephones in close proximity to themselves, on their person, in their vehicles, or at their business or place of operation. Cellular telephones, in addition to being communication devices, are also storage devices for data. Data electronically stored inside cellular telephones include telephone numbers of associates, logs of the date and time that individual calls were made, voice and text messages from associates and photographs of the primary user, family members and associates, location information, internet browsing history, calendar entries, task lists, contact information, and other similar data. The data inside cellular telephones is evidence of such sales activity, demonstrates true ownership and control of the telephones, which can be registered to another person, and can be effectively used to corroborate the statements of witnesses. With the advent of "smart phones" all of the documents and information discussed within this section can be held on a smart phone in electronic format as well.

6. Based upon training and experience in conducting investigations involving

controlled substances, your Affiant also knows that drug dealers, while utilizing electronic communication devices to conduct their business, will often use "slang," or "code words" when referring to their business activities. These code words may include reference to, but are not limited to, money, narcotics, other co-conspirators, and certain locations. Drug dealers use these code words in an attempt to conceal their illegal activities from law enforcement in an effort to avoid detection. Your Affiant is also aware that specific slang and code words utilized by those trafficking in controlled substances may be influenced by various factors such as geographical area, cultural influences, and the type of controlled substance being trafficked.

7. In your Affiant's training and experience, users of and traffickers in controlled substances, when hiding or transporting controlled substances or cash, commonly conceal them in several separate "stashes," often in several rooms of a building, outbuilding, vehicles, and in public or common areas which can be kept under their observation. Narcotics traffickers will also often place assets in names other than their own to conceal their assets from law enforcement.

8. Your affiant is aware that narcotics traffickers sometimes utilize multiple "stash locations" in an attempt to keep large quantities of controlled substances separate. Based on your Affiant's training and experience, your Affiant knows this to be done so that law enforcement cannot seize all of the controlled substance at one time if law enforcement is alerted to the location of a single "stash location." This is also done in an attempt to secrete controlled substances from non-law enforcement personnel in an attempt minimize the potential of a robbery by individuals seeking to take possession of controlled substances during armed robberies, home invasions, or routine thefts.

9. It has also been your Affiant's training and experience that those who use or traffic in controlled substances, especially when law enforcement appears, will attempt to physically separate themselves from the controlled substances. They often do this by placing a controlled substance in a "neutral" location. They often employ intermediaries as couriers and drivers, to store drugs or conduct transactions. These intermediaries often include associates, but may also be extended to women, juveniles, or older people. Traffickers will use these individuals to transport controlled substances or otherwise assist the operation. These "mules" (as they are sometimes called) hold or transport the controlled substances or cash, allowing the dealer to stay "clean." Traffickers will also often "hand off" incriminating evidence to another person if confronted by law enforcement. In sum, these methods are used to attempt to insulate traffickers from risk of detection and apprehension by law enforcement.

10. Based upon your Affiant's training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21 USC §§ 841(a) have been committed by BARKER and known and unknown co-conspirators, and that evidence of such violations will be at 7014 McCutcheon Road, Microtel Room 237, Chattanooga, Tennessee.

## **PROBABLE CAUSE**

11. The United States, including the ATF, is conducting a criminal investigation of BARKER and others regarding possible violations of Title 21, United States Code, Sections 841(a)(1). BARKER has been identified a distributor of cocaine, methamphetamine, heroin, and fentanyl in the Eastern District of Tennessee.

12. In July 2021, Chattanooga Police officers responded to a traffic wreck at 6221 Shallowford Rd., Chattanooga, TN which involved BARKER and another motorist. During the investigation, officers recovered approximately 10 grams of crack cocaine, approximately 5

grams of powder cocaine, and a firearm from BARKER's vehicle. BARKER was arrested and charged with weapon and narcotic violations.

13. In August 2021, your affiant obtained information from a now deactivated ATF confidential informant (hereinafter referred as CI-1) that BARKER was involved in the distribution of illegal narcotics, specifically heroin and methamphetamine in the Chattanooga, TN area. Furthermore, your affiant was advised BARKER is known to carry firearms and is always armed during illegal drug transactions. CI-1 had been proven to be reliable by providing information which were independently corroborated by your affiant. CI-1 has been deactivated from ATF's confidential informant program for failing to uphold the terms of the Confidential Informant program after he/she was arrested for possession of heroin.

14. In August of 2021, CI-1 advised he/she would be able to purchase heroin from BARKER. In August of 2021, at the direction of your affiant, CI-1 contacted BARKER, who was willing to sell CI-1 an agreed amount of heroin for an agreed upon price during a controlled buy operation in Chattanooga, Tennessee. During the operation, CI-1 was searched by your affiant for weapons and contraband with negative results. CI-1 was then outfitted with an audio listening and recording device and provided with Chattanooga Police Department funds to purchase the heroin from BARKER. CI-1 travelled to a pre-arranged location with constant visual from your affiant with no stops in between where he/she met with BARKER who sold him/her the suspected heroin. CI-1 advised BARKER was in possession of a firearm during the transaction.

15. In August of 2021, CI-1 advised he/she would be able to purchase heroin from BARKER on separate occasion. At the direction of your affiant, CI-1 contacted BARKER, who was willing to sell CI-1 an agreed amount of heroin for an agreed upon price during a controlled

buy operation in Chattanooga, Tennessee. During the operation, CI-1 was searched by your affiant for weapons and contraband with negative results. CI-1 was then outfitted with an audio listening and recording device and provided with Chattanooga Police Department funds to purchase the heroin from BARKER. CI-1 travelled to a pre-arranged location with constant visual from your affiant with no stops in between where he/she met with BARKER who sold him/her the suspected heroin.

16. In September of 2021, CI-1 advised he/she would be able to purchase heroin from BARKER. At the direction of your affiant, CI-1 contacted BARKER, who was willing to sell CI-1 an agreed amount of heroin for an agreed upon price during a controlled buy operation in Chattanooga, Tennessee. During the operation, CI-1 was searched by your affiant for weapons and contraband with negative results. CI-1 was then outfitted with an audio listening and recording device and provided with Chattanooga Police Department funds to purchase the heroin from BARKER. CI-1 travelled to a pre-arranged location with constant visual from your affiant with no stops in between where he/she met with BARKER who sold him/her the suspected heroin.

17. In December of 2021, CI-1 advised he/she would be able to purchase heroin from BARKER. At the direction of your affiant, CI-1 contacted BARKER, who was willing to sell CI-1 an agreed amount of heroin for an agreed upon price during a controlled buy operation in Chattanooga, Tennessee. During the operation, CI-1 was searched by your affiant for weapons and contraband with negative results. CI-1 was then outfitted with an audio listening and recording device and provided with official ATF funds to purchase the heroin from BARKER. CI-1 travelled to the Microtel, 7014 McCutcheon Road, Room 243, Chattanooga, Tennessee with constant visual from ATF Agents with no stops in between where he/she met with BARKER

inside of the room. CI-1 advised BARKER sold him/her the heroin from inside of room 243. CI-1 advised BARKER was armed with a firearm during the transaction.

18. In January 2022, your affiant obtained information from a different confidential informant (hereinafter referred as CI-2) that BARKER was involved in the distribution of illegal narcotics, specifically heroin laced with fentanyl and methamphetamine in the Chattanooga, TN area. Furthermore, your affiant was advised BARKER is always armed and known to carry firearms during illegal drug transactions. Furthermore, CI-2 advised that BARKER is now residing inside of room 237 of the Microtel, which was a known fact to your affiant. CI-2 is proven to be reliable by providing information which were independently corroborated by your affiant from this investigation and other ongoing federal investigations.

19. In February 2022, CI-2 advised he/she would be able to purchase heroin from BARKER. At the direction of your affiant, CI-2 contacted BARKER, who was willing to sell CI-2 an agreed amount of heroin for an agreed upon price during a controlled buy operation in Chattanooga, Tennessee. During the operation, CI-2 was searched by your affiant for weapons and contraband with negative results. CI-2 was then outfitted with an audio listening and recording device and provided with official ATF funds to purchase the heroin from BARKER. CI-2 travelled to the Microtel, 7014 McCutcheon Road, Room 237, Chattanooga, Tennessee with constant visual from ATF Agents with no stops in between where he/she met with BARKER inside of room 237. CI-2 advised BARKER sold him/her the suspected fentanyl from inside of room 237.

20. In February 2022, CI-2 advised again he/she would again be able to purchase heroin from BARKER. At the direction of your affiant, CI-2 contacted BARKER, who was willing to sell CI-2 an agreed amount of heroin for an agreed upon price during a controlled buy

operation in Chattanooga, Tennessee. During the operation, CI-2 was searched by your affiant for weapons and contraband with negative results. CI-2 was then outfitted with an audio listening and recording device and provided with official ATF funds to purchase the heroin from BARKER. CI-2 travelled to the Microtel, 7014 McCutcheon Road, Room 237, Chattanooga, Tennessee with constant visual from ATF Agents with no stops in between where he/she met with BARKER inside of room 237. CI-2 advised BARKER sold him/her the suspected fentanyl from inside of room 237. This most recent controlled buy occurred within the last 36 hours.

21. Based upon my training, experience, your affiant is aware of the fact that drug traffickers often keep evidence, fruits of the crime, and instrumentalities at their residence and in their vehicles. Similarly, individuals involved in drug trafficking often keep books, records, and other documents which relate to their illicit activities at their residence and in their vehicles.

22. WHEREFORE, based upon the facts detailed above, together with your Affiant's training and experience in drug trafficking investigations, your Affiant believes and submits there is probable cause to believe that the premises located at 7014 McCutcheon Road, Room 237, Chattanooga, Tennessee, (Further Described in Attachment A) will contain evidence, fruits, and instrumentalities of the illegal possession of firearms and drug trafficking, ~~particularly of cocaine and marijuana,~~ *ml* in violation of Title 21, United States Code, Section 841. These fruits, evidence and instrumentalities are described with particularity in Attachment B.

[SIGNATURES ON NEXT PAGE]

_____
Marc Saint Louis
Special Agent
Bureau of Alcohol, Tobacco, Firearms, And Explosives

Sworn to and subscribed before me this 7th day of February, 2022.

_____
HON. CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

Page **10** of **10**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

IN THE MATTER OF THE )
SEARCH OF MICROTEL ROOM 237 )
RESIDENCE, LOCATED AT 7014 ) FILED UNDER SEAL
MCCUTCHEON ROAD, )
CHATTANOOGA, TENNESSEE ) Case No. 1:22-mj-29
 )

## ATTACHMENT A



The Microtel (Room 237), located at 7014 McCutcheon Road, Chattanooga, Tennessee is off Highway 11/64 (Lee Highway), down an access road off McCutcheon Road, in Hamilton County, Tennessee as shown in the map.

Page 1 of 2



Page **2** of **2**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE ) | |
| SEARCH OF MICROTEL ROOM 237 ) | |
| RESIDENCE, LOCATED AT 7014 ) | FILED UNDER SEAL |
| MCCUTCHEON ROAD ) | |
| CHATTANOOGA, TENNESSEE ) | Case No. 1:22-mj- |
| ) | |

## ATTACHMENT B

1. Books, photographs, records, receipts, notes, ledgers and other papers which show the transportation, ordering, purchase, distribution, possession, sale or manufacture of controlled substances;

2. Address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers, written or typed by hand as opposed to printed commercially;

3. Books, letters, records, computerized and electronic records, receipts, bank statements and records, money drafts, letters of credit, wire transfers, safe deposit box keys, money order and cashier's check receipts, passbooks, bank checks, and other items that reflect the expenditure, obtaining, secreting, transfer or concealment of drug proceeds;

4. United States currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, notes and other documents showing an accumulation of assets, wealth, or money to the extent that these items are found in such quantity, substance and/or quality as to permit a reasonable inference that such items are proceeds of drug trafficking;

5. Controlled substances, material and paraphernalia for manufacturing, packaging, cutting, weighing and distributing controlled substances, including but not limited to: scales,

baggies, packing material;

6. Indicia of occupancy, residency, and/or ownership of the premises described above and other real property, including but not limited to deeds, utility and telephone bills, canceled envelopes and keys;

7. The visual image, by way of photography, of all furnishings and equipment in, on, under, attached, or appurtenant to said premises;

8. Papers, tickets, notes schedules, receipts and other documents relating to travel to and from drug source areas and drug distribution areas;

9. Firearms;

10. Cellular telephones